## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN J. ROLES, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:17-226 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| MELISSA HAINSWORTH, ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, and THE DISTRICT | ) | |
| ATTORNEY OF CAMBRIA COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION AND ORDER

Brian J. Roles ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 6, seeking to attack his state court convictions for, *inter alia*, homicide by vehicle while driving under the influence. The truck crash caused by Petitioner resulted in the death of his son who was riding in the front passenger seat of the truck, in addition to Petitioner's nephew also being in the truck.

For the reasons that follow, the Petition will be denied because none of the claims asserted by Petitioner merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court, in its July 26, 2017 Memorandum, affirming the denial of relief in the Post Conviction Relief Act ("PCRA") proceedings, recounted the facts of the crimes and evidence adduced at Petitioner's trial as follows:

Appellant was found guilty by a jury of homicide by vehicle while driving under the influence ("DUI") of alcohol or controlled substances, homicide by vehicle, aggravated assault by vehicle while DUI, involuntary manslaughter, two counts of recklessly endangering another person, DUI—second offense general impairment, DUI—second offense highest rate, and DUI—second offense drug and alcohol combination. These convictions arose from a single-vehicle accident that occurred at approximately 10:45 p.m. on April 8, 2012. Appellant was driving a truck that veered off the road in the 600 block of William Penn Avenue, East Taylor Township. The truck traveled up an embankment, crashed into a pole, and came to rest on the driver's side. Appellant's son, Brian Jr., sitting in the front passenger's seat, was ejected from the truck during the incident, and was pronounced dead at the scene. Appellant's nephew, K.R., was in the rear passenger seat.

Police Officer Shaun Gregory, who worked both for the East Taylor Township Police Department and the Jackson Township Police Department, responded to the police call about the accident. After Officer Gregory arrived on the scene at approximately 11:00 p.m., he spoke with Appellant. Appellant "said he was driving northbound on William Penn Avenue," when another vehicle traveling southbound "came in his lane of travel, causing him to swerve off the side of the road, up the embankment and strike the telephone pole." N.T. Trial, 8/27/13, at 14. Appellant had bloodshot and glassy eyes and the odor of alcohol was emanating from him; he was also visibly upset about the death of his son.

Officer Gregory described the scene as very chaotic since members of the Roles family were present and were reacting to the death of Brian Jr. As Officer Gregory suspected Appellant was DUI, he placed him in a police car, and East Taylor Township Police officer Joseph Marsh transported him to Conemaugh Hospital, which was a five-minute drive, for a blood test.

While K.R. was receiving treatment in an ambulance, Officer Gregory asked him what had occurred. K.R. reported that an oncoming vehicle had forced them from the road and that Brian was driving. K.R. did not state whether Appellant, who was known as big Brian, or Brian Jr., who was called little Brian, was the driver.

Dr. Matthew Perry treated Appellant in the emergency room and reported that Appellant had minor abrasions to his lower extremities. Appellant was cooperative but "smelled of alcohol." N.T. Trial, 8/28/13, at 122. Dr. Perry testified that he asked Appellant a standard question, which was "his position in the car, and [Appellant] told me he was the driver." *Id*. at 123. Blood alcohol testing revealed that Appellant had a blood alcohol content of .17%. In addition, Appellant's blood tested positively for the presence of Oxycontin and Xanax.

Dr. Eric Roslonski, a pain management physician, also testified on behalf of the Commonwealth. Appellant was one of his patients when the accident occurred. At an April 27, 2012 appointment with Dr. Roslonski, Appellant discussed follow-up on a prior pain management plan. Appellant told Dr. Roslonski about the April 8, 2012 traffic accident and stated that "he was driving his truck with his 16 year old son and teenage nephew and he was run off the road [.]" N.T. Trial, 8/29/13, at 211.

The Commonwealth also presented the testimony of Greg Sullenberger, an accident reconstructionist and expert in occupant kinematics. Mr. Sullenberger testified that the victim's injuries were consistent with having been expelled from the passenger side of the vehicle.

Appellant testified at trial on his own behalf. He denied driving the truck, stating that he had a seizure minutes before the truck crashed and awoke to find his son driving and an oncoming car headed in their direction. On August 29, 2013, K.R. testified on behalf of Appellant as follows. He stated that Appellant was driving, they stopped at a local shop for sandwiches and beer, and Appellant fell over when they were walking back to the truck. Brian Jr. told K.R. that Appellant often had seizures so he and Brian Jr. placed Appellant into the truck. At that point, Brian Jr. took over driving responsibilities and was driving when a car entered their lane of travel and forced them from the road. In his defense, Appellant also presented expert testimony from Thomas Laino, who opined that Appellant's son had been driving.

The next day, August 30, 2013, K.R. voluntarily came forward to the district attorney, Eric Hochfeld, Esquire, and said that the testimony he had given at trial on August 29, 2013, was false and that he wanted to recant it. K.R. agreed, in exchange for not being charged with perjury, to return to the stand and testify on behalf of the Commonwealth as a rebuttal witness.

Before K.R. testified, the jury was told that "the defendant is entitled to an instruction to you that, if K.R. testifies today in a fashion that's contrary to what he testified to yesterday, the district attorney may well be able to charge him with perjury." N.T. Trial, 8/30/13 at 158. The trial court also informed the jury that the district attorney had offered "not to prosecute [K.R.] if his testimony is in divergence with what he testified to yesterday." *Id*.

K.R. explained to the jury that, after his August 29, 2013 testimony, he could not eat or sleep as he "felt guilty ... [b]ecause my cousin is not getting the justice he deserves." *Id*. at 159–60. The morning of August 30, 2013, K.R. went to school and spoke to school personnel about the situation, and they contacted Cambria County Children and Youth Services ("CYS"), which sent a representative to help K.R. After consulting with the CYS employee and speaking with his own lawyer, K.R. decided to change his testimony from the previous day.

3

On August 30, 2013, K.R. testified as follows. Appellant, Brian Jr., and he had stopped at a local shop and ordered sandwiches, but, afterward, Appellant had not fallen to the ground. Rather, they had all merely entered the truck together and departed. Appellant was driving, Brian Jr. was in the front passenger seat, and K.R. occupied the rear passenger seat. K.R. also denied that an oncoming car had caused the accident. Instead, "big Brian, he either fell asleep or nodded away or something. And he started to drift to the right, and Brian Jr., little Brian, grabbed the wheel, and the truck just wrecked. It just flipped." *Id*. at 164. K.R. repeated that Appellant was driving, Appellant started to nod, and the truck began to veer to the right. K.R. insisted that there was no oncoming car in their lane of travel.

K.R. also testified that, immediately after Appellant was charged herein, Appellant began to have frequent conversations with K.R. about his testimony and about what to say at trial. Appellant directed K.R. to testify that Brian Jr. was driving and that an oncoming car forced them from the roadway. *Id*. at 167–168. K.R. was then questioned about a written statement that he had given to police:

> Q. There was a written statement that was admitted as a defense exhibit, and you recall giving that statement to the police.
>
> A. Yes.
>
> Q. And your father was present at the time.
>
> A. Yes.
>
> Q. And you stated yesterday that was—that was the truth, that that's what had happened, what was in that statement?
>
> A. Yes.
>
> Q. Would you agree then that statement isn't correct based on what you're saying today?
>
> A. Yes.
>
> Q. And was that statement the product of your uncle telling you what to say?
>
> A. Yes.

*Id*. at 169. K.R. was not cross-examined; Appellant's two trial lawyers simply established that they were not involved, prior to trial, in crafting K.R.'s August 29th testimony. After he gave his trial testimony, K.R. reported to the trial judge that he was not comfortable returning home, declined the opportunity to be remanded to the custody of CYS, and was allowed to stay at his girlfriend's home.

Com. v. Roles, 1338 WDA 2016, 2017 WL 3172594, at *1–3 (Pa. Super. July 26, 2017); ECF

No. 32-3 at 1 – 7.

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Pennsylvania Superior Court, in its July 26, 2017 Memorandum, recounted the

procedural history of the case follows:

> Appellant was convicted of the above-delineated charges, and, on
> September 25, 2015, sentenced to eight and one-half to seventeen years
> incarceration. The court, which had the benefit of a pre-sentence report, indicated
> that Appellant had juvenile adjudications as well as thirty prior adult convictions,
> and some parole violations. On appeal, we affirmed. *Commonwealth v. Roles*,
> 116 A.3d 122 (Pa. Super. 2015), *appeal denied*, 128 A.3d 220 (Pa. 2015).[1]

> [
> 1 The issues raised in Petitioner's direct appeal were as follows:

> I. Whether the Trial Court abused its discretion and/or committed an error of law
> when it denied Appellant's Motion to Dismiss Charges with Prejudice pursuant
> to Pa.R.Crim.P. 600?

> II. Whether the Trial Court erred in sending with the Jury, the Report of Eric
> Roslonski, MD, which has been marked as Commonwealth's Exhibit 73 but was
> not admitted into evidence?

> III. Whether the Trial Court erred in not excluding the testimony of Corporal
> Thomas Carrick and/or not issuing a cautionary or curative instruction to the Jury
> relative to his expert opinion which was not provided to the Defense prior to
> trial?

> COMMONWEALTH OF PENNSYLVANIA, Appellee, v. Brian J. ROLES,
> Sr., Appellant, 2014 WL 7894407 (Pa. Super.), at *4.]

> Appellant filed a timely *pro se* PCRA petition, counsel was appointed, and
> counsel filed two amended PCRA petitions. PCRA relief was denied following a
> hearing. In this appeal, Appellant raises these averments:

1.  Was trial counsel ineffective in failing to deliver a closing statement to the jury, despite Appellant's efforts to have them do so?

2.  Was trial counsel ineffective in failing to cross-examine the only eyewitness to the alleged crime offered by the Commonwealth, despite his obvious inconsistent testimony at trial?

3. Was trial counsel ineffective in opting to proceed to trial when it knew that potentially exculpatory evidence in the Commonwealth's possession had not been analyzed as ordered by the Court?

4. Was trial counsel ineffective in failing to impeach one of the investigating officers during his testimony by using his prior statements?

5. Was trial counsel ineffective in failing to pursue text messages sent by the victim on the night of the incident in question that may have been exculpatory in nature towards the Appellant?

6. Was trial counsel ineffective when he incorrectly stated at sentencing that the Appellant's convictions carried a 5–year mandatory sentence when they, in fact, only carried a 3–year mandatory sentence?

7. Was trial counsel ineffective in failing to object to the lack of merger, for sentencing purposes, of Appellant's convictions for Homicide by Vehicle and Homicide by Vehicle by DUI?

Appellant's brief at 4.

Com. v. Roles, 2017 WL 3172594, at *3; ECF No. 32-3 at 7 - 8.

After the Superior Court affirmed the denial of PCRA relief, it does not appear that Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.

**B.  Federal Court Procedural History**

Petitioner is proceeding pro se, and in forma pauperis. ECF No. 5.  Petitioner utilized the form habeas petition and filled out the following four Grounds for Relief in the Petition.  ECF No. 6.

**GROUND ONE:** Defendant[']s Due Process was violated because trial counsel ineffectiveness for failing to procedurally challenge the propriety and move for immediately [sic] discharge under Pa.R.Crim.P. 600.  This is a violation of the United States Constitutions 5, 8, 9, 14.

Id. at 5.

**GROUND TWO:**  Defendant[s]' trail [sic] counsel failed to properly do a closing argument at the end of trial.

Id. at 7.

**GROUND THREE:**  The court intentionally allowed The Doctor Report of the defendant to go in the deliberation room with the jury which violated the defendant['s] constitutional rights[.]

Id. at 8.

**GROUND FOUR:**  Defendant's trial counsel never challenged the fact that the evidence pertaining to the texting message sent from the victim's cell phone would have exonerated the defendant.

Id. at 10.

Petitioner attached to the Petition three typed pages and listed therein 18 different claims. ECF No. 6 at 16 – 18.  We are attaching the three pages as an appendix hereto. We will refer to these 18 separate claims as "Supplemental Claim __" utilizing the appropriate numeral preceding each claim.  The Supplemental Claims sometimes repeat the Grounds for Relief raised in the Petition.  Petitioner also attached an extensive number of exhibits to the Petition.

Following receipt of the Petition, the Court had issued a deficiency order directing Petitioner to provide service copies of the Petition and exhibits.  ECF No. 8.  Petitioner replied to the first deficiency order by supplying copies of the Petition but not the accompanying exhibits. ECF No. 9.  Accordingly, the Court issued a second deficiency order, requiring Petitioner to provide the exhibits as well.  ECF No. 10.

Thereafter, Petitioner filed a motion for multiple relief, requesting, 1) appointment of counsel, 2) a motion to extend time to comply with the second deficiency order and 3) a motion for reduced number of service copies.  ECF No. 11.  The Court denied the request to appoint counsel but granted the request to extend the time (in part, giving Petitioner less than the full 90 days requested) and granted him permission to file only one set of the exhibits. ECF No. 12. Petitioner then filed a nearly identical copy of the three pages of Supplemental Claims along with additional exhibits attached.  ECF No. 13.    After some additional problems with supplying the exhibits attached to the Petition, ECF Nos. 16 – 18, Petitioner finally supplied the necessary exhibits.  ECF No. 20.  The Court thereafter ordered service of the Petition and the exhibits on the Respondents.  ECF No. 21.  After being granted an extension of time to file, ECF No. 24, Respondents filed their Answer, denying that Petitioner was entitled to any relief.  ECF No. 27. In the Answer, Respondents did not specifically address any of the Supplemental Claims. Respondents also supplied copies of much of the state court record.  ECF Nos. 28 – 35.

All of the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings.  ECF Nos. 26 and 36.

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides

the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).  A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)).  The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court,

be accepted as correct.'"  Dennis v. Sec., Pennsylvania Dept. of Corrections, 834 F.3d 263, 368 (3d Cir. 2016) (en banc) (quoting, Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  Moreno v. Ferguson, CV 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), certificate of appealability denied, 2020 WL 2974697 (3d Cir. May 19, 2020).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, 2:07-CV-00021-KJD, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable

application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law: We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pennsylvania Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

IV. DISCUSSION

A. Ground One and Supplemental Claims 1 through 6 Do Not Merit Relief.

In Ground One, Petitioner asserts that his trial counsel was ineffective for not challenging the alleged violation of his rights under the Pennsylvania Rule of Criminal Procedure 600 concerning strict time limits within which an incarcerated pre-trial detainee must be brought to trial. Similarly, Supplemental Claims 1 through 6, all depend upon Petitioner establishing a violation of Pa. R. Crim. P. 600. We will specifically analyze Petitioner's Ground One and in the course of doing so, conclude that Petitioner failed to establish a violation of Rule 600, and,

11

consequently, is not entitled to any relief on Ground One or any of his related Supplemental Claims 1 through 6.

### 1. Ground One is procedurally defaulted.

In Ground One, Petitioner raises a claim in this Court that his trial counsel was ineffective.[1]  Specifically, Petitioner claims that his trial counsel was ineffective for failing to "procedurally challenge the propriety and move for immediately [sic] discharge under Pa.R. Crim.P. 600."  ECF No. 6 at 5.  For the following reasons, we find that Ground One was procedurally defaulted in addition to being meritless.

### a. The doctrine of procedural default.

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court.  See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure

---

[1] Specifically, Petitioner asserts that his right to "[d]ue process was violated because trial counsel['s] ineffectiveness…"  ECF No. 6 at 5.  We understand Petitioner's language to mean that he is making a traditional challenge to his trial counsel's stewardship under the Sixth Amendment standards incorporated against the States via the Fourteenth Amendment's substantive due process clause. James v. Mauldin, CV08-0586, 2010 WL 366722, at *29 (D. Ariz. Jan. 27, 2010) ("The safeguards provided in the Sixth Amendment, including right to counsel, apply to the states through the Due Process Clause of the Fourteenth Amendment.")(citing Kansas v. Ventris, 556 U.S. 586, 129 S.Ct. 1841, 1844–1845, 173 L.Ed.2d 801 (2009) (right to counsel under the Sixth Amendment applies to the states through the Fourteenth Amendment); Danforth v. Minnesota, 552 U.S. 264, ——, 128 S.Ct. 1029, 1035, 169 L.Ed.2d 859 (2008) ("Slowly at first, and then at an accelerating pace in the 1950's and 1960's, the Court held that safeguards afforded by the Bill of Rights—including a defendant's Sixth Amendment right[s] …— are incorporated in the Due Process Clause of the Fourteenth Amendment and are therefore binding upon the States.")).

requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).  The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief."  Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992).  See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

There are two exceptions to the procedural default doctrine.  A federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default.  Wainwright v. Sykes.   In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'  *Murray v. Carrier*, 477 U.S. 478, 488 (1986)."   Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996).   In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . .  This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'"  Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted).  The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice."  In Werts, the Third Circuit explained this exception as follows:

> [I]f the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice."   Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice.  See, e.g., Wainwright v. Sykes;  McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999);  McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278,  at *3 n.3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

### b.  Petitioner procedurally defaulted Ground One.

We note that, of the seven claims of ineffective assistance of counsel that Petitioner did raise in his appeal brief before the Pennsylvania Superior Court during the PCRA proceedings, which were recounted in the course of reciting the state court procedural history above, this specific claim of trial counsel's ineffectiveness relative to Rule 600 is missing.  Petitioner never raised such a claim of ineffectiveness relative to counsel's conduct regarding Pa. R. Crim. P. 600.

Accordingly, we find Ground One was procedurally defaulted and cannot provide a basis for relief in these federal habeas proceedings as Petitioner cannot, on the record before this Court, show either cause and prejudice or a miscarriage of justice.

### 2.  Counsel was not ineffective as there was no Rule 600 violation.

Furthermore, even if we were to review this claim *de novo*, we would find the ineffectiveness claim fails because Petitioner cannot show counsel was ineffective for failing to raise a Rule 600 challenge.  The reason for this is obvious, in fact, Petitioner's trial counsel did raise and litigate a Rule 600 claim on which the trial court held a pre-trial hearing which resulted in the trial court denying any relief.  On direct appeal, the alleged violation of Rule 600 was raised again and was addressed by the Superior Court.  After an extensive analysis of the record and the applicable state law, the Superior Court found that there was no violation of Rule 600 in Petitioner's case.  Com. v. Roles, 116 A.3d 122, 124 - 28 (Pa. Super. 2015); ECF No. 35-4 at 17 – 24.

Such a finding on a state law issue of what is required under Rule 600 and whether Rule 600 was violated in Petitioner's case is binding on this Court absent extraordinary circumstances

15

which are not present here.  See, e.g., Johnson v. Rosemeyer, 117 F.3d 104, 114 (3d Cir. 1997),

wherein the United States Court of Appeals for the Third Circuit explained:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.

(quoting West v. American Tel. & Tel. Co., 311 U.S. 223, 236–37 (1940)) (citations omitted).  In

this regard, we note that although Petitioner filed a Petition for Allowance of Appeal to the

Pennsylvania Supreme Court from the Superior Court's decision denying him relief on this

ground, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. Com. v.

Roles, 633 Pa. 786, 128 A.3d 220 (2015) (TABLE).

In light of the foregoing then, it is clear that counsel cannot be deemed ineffective when,

in fact, he did litigate a pre-trial motion based on Rule 600, requiring the trial court to conduct a

hearing on the issue.  However, after conducting the hearing, the trial court ultimately denied

relief on the Rule 600 ground and the Pennsylvania Superior Court ultimately affirmed the denial

of relief but on a differing rationale from the trial court.

Lastly, in light of the fact that any claim based on an alleged violation of Rule 600

necessarily fails given the binding decision of the state courts that there was no violation of this

state rule of criminal procedure, Petitioner's Supplemental Claims 1 through 6, inclusive,

likewise fail as they all depend upon Petitioner establishing a violation of Rule 600, something

that he simply cannot possibly do in this Court now, having failed to do so in the state courts.

Accordingly, the Court finds that Ground One, and Supplemental Claims 1 through 6, are

procedurally defaulted and do not merit federal habeas relief.

**B. Ground Two and Supplemental Claim 11 are Meritless.**

In Ground Two, Petitioner contends that trial counsel was ineffective for failing to make a closing argument to the jury.  Supplemental Claim 11 mirrors Ground Two.[2]

The state courts addressed this issue on the merits in the course of the PCRA proceedings. and denied Petitioner relief.  As explained immediately below, Petitioner fails to carry his burden to show that the state courts acted contrary to or unreasonably applied United States Supreme Court precedent on ineffective assistance of counsel.

**1. The *Strickland* standard.**

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91.  In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions.  Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.").  In light of the foregoing, the United States Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should

---

[2] Specifically, Petitioner claims in Supplemental Claim 11 that his "Due Process rights were violated when Trial Counsel failed to properly preform [sic] the closing argument on behalf of his client which completely is a violation of the Defendant's constitutional rights under the U.S.C. 5, 8, 9, 14 Amendments."  ECF No. 6 at 17.

succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the Pennsylvania state courts addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Premo v. Moore, 562 U.S. 115, 122 - 123 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)).  Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review

under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), <u>rejected on other grounds by</u>, <u>Dennis</u>, 834 F.3d at 293.

### 2. The Superior Court's application of *Strickland*.

The Superior Court addressed the ineffectiveness of trial counsel claim, raised in Ground Two herein, as follows:

> Appellant's first averment is that Mr. Banda, who was scheduled to conduct summation, was ineffective for failing to present closing argument after K.R.'s stunning admission that Appellant had suborned K.R.'s perjury and committed perjury himself. This rebuttal testimony was presented just before counsel was to offer closing remarks to the jury. After K.R. presented this rebuttal testimony, Mr. Banda simply stated that he would not be giving closing remarks due to the circumstances that had just occurred.

> On appeal, Appellant relies upon ***Commonwealth v. Sparks***, 539 A.2d 887 (Pa.Super. 1988), wherein we opined that trial counsel was ineffective for not giving closing remarks to the jury. That case involved a robbery and rape, where, at his jury trial, the defendant offered an alibi defense. The record indicated that both the defense and the Commonwealth evidence, including the victim's identification testimony, was "ambiguous and conflicting." ***Id***. at 888.

> After the defense rested, the defendant's lawyer stated that he would not offer closing remarks since the testimony was "already riddled with confusion, reasonable doubt and contradictions." ***Id***. at 889. The prosecutor proceeded to present a "summation spanning thirty-nine pages of trial transcript, in which, *inter alia*, he offered explanations for the inconsistencies in the Commonwealth's evidence and characterized the [complex] medical evidence as 'unrefuted.' " ***Id***. At the hearing on the defendant's petition for post-conviction relief, trial counsel explained that he declined summation since he believed that he "had the case won," and "that his disdain for the Commonwealth's evidence would have an impact on the jury by suggesting, at least by implication, that he 'did not want to dignify the Commonwealth's case with a response.' " ***Id***.

> The ***Sparks*** Court noted that "the constitutional right to representation by counsel in a criminal proceeding includes the right to make a closing argument," but acknowledged that "the right may be waived as a matter of trial strategy." ***Id***. at 889. It observed that the cases where trial counsel was determined to have acted reasonably in foregoing summation had involved "non-jury trials of short duration

in which the evidence had been straightforward and uncomplicated." *Id*. The *Sparks* Court rejected trial counsel's proffered trial strategy as reasonable because the trial was before a jury, the evidence was inconsistent on both sides, there were complex medical issues involved, and the Commonwealth had explained the inconsistencies in its case and characterized the medical evidence as solid while the defendant's trial counsel abandoned the opportunity to rebut these positions.

This Court in *Sparks* relied upon the United States Supreme Court's view on the importance of closing argument as elucidated in *Herring v. New York*, 422 U.S. 853 (1975), wherein the Court ruled unconstitutional a state statute that allowed judges presiding over nonjury trials to deny counsel the opportunity to make closing remarks. The *Herring* Court observed:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Id*. at 862.

In his argument on appeal, Appellant analogizes the evidence presented at his trial to that at issue in the *Sparks* case, and he relies upon *Herring's* opinion as to the importance of summation. Appellant, however, overlooks the spectacular ending of his own jury trial. K.R. was the only eyewitness to the events in question. After the close of the defendant's case, K.R. came forward, despite trepidation about the consequences that he would suffer, and outlined to the jury that Appellant perjured himself and that Appellant had actively solicited and suborned perjury from K.R. This testimony was presented immediately before trial counsel had to make his summation to the jury.

As Mr. Banda explained at the PCRA hearing, he did not want to call his own star witness a liar. The PCRA court herein concluded that this explanation was reasonable, that *Sparks* was distinguishable, and that Appellant was not prejudiced by the absence of a summation. Trial Court Opinion, 8/3/16 at 7 (based on its instructions to the jury, "we cannot find that the lack of a closing argument prejudiced the Defendant"). The record does not support a finding that the PCRA court abused its discretion in this respect.

We concur with the PCRA court that, based upon the instructions that were disseminated to the jury, Appellant did not meet his burden of proving the prejudice aspect of the ineffective-assistance-of-counsel test, *i.e.*, that there is a

reasonable probability that the outcome of the trial proceedings would have been different had Mr. Banda offered closing remarks. We first observe that Appellant makes no suggestion as to what summation could have been offered, merely suggesting that there were unspecified weaknesses in the Commonwealth's case that Mr. Banda could have pointed out to the jury. Appellant's brief at 14. However, when Mr. Banda was asked to close, his star witness had just recanted, said he was pressured by Appellant to perjure himself, and accused Appellant of perjury. At most, Mr. Banda could have said that K.R. was perjuring himself on August 30, 2013, rather than on August 29, 2013, and that Appellant's August 29, 2013 testimony was truthful, even though, prior to being charged, Appellant told a police officer and two doctors that he was driving when the accident occurred.

Second, we conclude that the trial court's instructions dispelled any prejudice flowing from Mr. Banda's failure to offer what could have been, at best, a meager closing. The court told that jury that, during deliberations, "you may find inconsistencies in the evidence that was presented. **Even actual contradictions of witnesses don't necessarily mean that anyone was testifying in a willfully false manner**." N.T. Trial, 8/30/13, at 188 (emphasis added). It noted that poor memory was not uncommon and could cause a witness to remember events incorrectly. The trial court continued, "[I]t's also true that two people witnessing the same incident may see or hear it differently." *Id*. at 188–89.

After informing the jury that it was tasked with attempting to reconcile conflicting statements, the court said that, if the jury decided that "there is a real, a genuine and an irreconcilable conflict of testimony, it's your function to determine which, if any, of the conflicting and contradictory statements you will believe." *Id*. at 189. After outlining the factors that a jury should consider in assessing credibility, the court observed that "the defendant took the stand as a witness in this case." *Id*. at 190. It continued: "In considering the defendant's testimony, you're to follow the general instructions I just gave you as to judging the credibility of the witness. But I have to caution you, **you should not disbelieve the defendant's testimony merely because he's the defendant**." *Id*. at 190–91 (emphasis added). The court then admonished the jury that, if it concluded that "any witness testified falsely about a material point, ... you may for that reason alone choose to disbelieve the rest of his testimony, **but you're not required to do so**," and it indicated that other parts of that witness's testimony could be credited. *Id*. at 191 (emphasis added).

The trial court specifically examined the testimony offered by K.R. It noted that K.R.'s testimony given that day differed from the testimony "he gave yesterday under oath," thereby subjecting him to potential prosecution for perjury. *Id*. at 192. It outlined the elements of perjury and noted that the district attorney had agreed not to prosecute K.R. for that crime. The trial court then stated to the jury: "**You should, however examine closely and carefully and receive with caution the testimony of any witness who you find either presently or previously committed perjury**." *Id*. at 192 (emphasis added). The

21

court then proceeded to instruct the jury on how to assess the credibility of the expert witnesses offered at trial and to resolve the conflicts in their testimony.

The trial court indicated that a lawyer's argument was not to be considered as evidence, gave an extensive definition of reasonable doubt and the burden of proof, and outlined the elements of the crimes. It next observed that it was "entirely possible for a single witness to give truthful and accurate testimony and that his or her testimony may be believed even though a greater number of witnesses of apparently equal reliability contradicted him or her." *Id*. at 212.

These statements were disseminated by the trial court itself rather than constituting argument made by a lawyer who was representing Appellant. In light of the trial court's pointed instructions, we conclude that Appellant failed to establish a reasonable probability that his counsel could have offered a summation that would have resulted in an acquittal, especially since Appellant neglects to outline any specific argument that would have refuted the overwhelming evidence of his guilt.

Com. v. Roles, 2017 WL 3172594, at *4–6; ECF No. 32-3 at 9 - 15.

### 3.   Petitioner fails to carry his burden under AEDPA.

First, we note that the Superior Court applied the three pronged Pennsylvania state law standard of ineffectiveness known as the Pierce standard, Roles, 2017 WL 3172594, at *4; ECF No. 32-3 at 8 - 9 (citing Com. v. Busanet, 54 A.3d 35, 46 (Pa. 2012)), which is not contrary to Strickland in the first sense of applying a wrong rule of law.   Werts, 228 F.3d at 203.   In addition, Petitioner fails point to any other United States Supreme Court precedent on ineffective assistance of counsel which was contrary to (in the second sense) how the state courts decided this claim, i.e., a United States Supreme Court case with similar facts where the outcome was different from the outcome that the state courts reached herein.

Petitioner also fails to even assert that the state courts engaged in any unreasonable determination of the facts and, therefore, necessarily fails to carry his heavy burden herein under the AEDPA.   Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, 2008 WL 203361, at *5; West v. Foster, 2010 WL 3636164, at *10;   Moreno v.

22

Ferguson, CV 17-1412, 2019 WL 4192459, at *7 (W.D. Pa. Sept. 4, 2019) ("Accordingly, we find that Petitioner fails to carry his burden to show entitlement to relief under 28 U.S.C. § 2254(d)(2) for two independent reasons. First, he fails to point to a specific factual finding made by the state courts which was an unreasonable determination. Second, Petitioner has pointed to no specific evidence, yet alone clear and convincing evidence, which the state courts found credible, to rebut any specific state court factual finding."). Nor do we find that there was any unreasonable determination of the facts.

Even if we were to provide *de novo* review to this claim of ineffectiveness, we would find no prejudice from counsel's declining to make a closing argument in light of the dramatic change in testimony of K.R.  It is doubtful that any closing made by any attorney could have attenuated in any fashion the damaging and, apparently the very-convincing-to-the-jury recantation evidence of K.R.

For all of the foregoing reasons, Ground Two and Supplemental Claim 11 fail to merit any relief in these federal habeas proceedings.

### C.  Ground Three and Supplemental Claim 10 Do Not Merit Relief.

In Ground Three, Petitioner complains that the trial court "intentionally allowed the Doctor Report of the defendant to go in the deliberation room with the jury which violated the defendant['s] constitutional rights."  ECF No. 6 at 8.[3]  Specifically, Petitioner complains that notes which Dr. Eric Roslonski had taken, and which contained Petitioner's statement to the doctor that he had been the driver of the truck violated his rights.

---

[3]  In Supplemental Claim 10, Petitioner asserted that "Defendant['s] due process rights were violated when Trial Counsel fail[ed] to challenge the fact that the court issued/allowed exhibits to go in the jury deliberation room of the Doctor[']s  Report which contained confession's [sic] allowing the jury to use for deliberation in order to find defendant guilty and violating Defendant's constitutional rights.  This is a violation of the U.S.C. 5, 8, 9, 14 Amendments." ECF No. 6 at 17.

**1. This claim was never raised as a federal claim of any sort and is, therefore, procedurally defaulted.**

Initially, we note that Petitioner raised the factual contention that it was error to allow Dr. Roslonski's notes to go out with the jury in their deliberations in his direct appeal brief ("Direct Appeal Brief") to the Superior Court.  ECF No. 30-3 at 16 – 20.  There is, however, no reference to any federal law in the Direct Appeal Brief.  In fact, the Direct Appeal Brief relies solely on state court caselaw which construes the Pennsylvania Rules of Criminal Procedure, specifically Pa. R. Crim. P. 646.[4]  As such, we find that Petitioner never "fairly presented" to the state courts any federal claim based on the alleged notes going out with the jury, and, therefore has procedurally defaulted any federal claim that might have been capable of being raised with respect to this factual claim.  See Hawkins v. Bickel, CIV.A. 11-1217, 2013 WL 3340527, at *9 (W.D. Pa. July 2, 2013) ("The rule emerges from the foregoing that, in order to avoid a procedural default of a federal law claim (the only kinds of claims cognizable in a federal habeas petition), a federal habeas petitioner must have fairly presented the federal law claim to the state courts and not just a similar or parallel state law claim and if the petitioner fails to present the federal law claim and has no present means to do so in state court, then the federal law claim has

---

[4] Pa. R. Crim. P.  646 provides in pertinent part as follows:

    (C) During deliberations, the jury shall not be permitted to have:
        (1) a transcript of any trial testimony;
        (2) a copy of any written or otherwise recorded confession by the defendant;
        (3) a copy of the information or indictment; and
        (4) except as provided in paragraph (B), written jury instructions.

Pa. R. Crim. P. 646

been procedurally defaulted."). And, on this record, Petitioner could not establish either cause and prejudice, or a miscarriage of justice.

### 2. The related ineffective assistance of trial counsel claim.

In the fact section of Ground Three of the Petition, Petitioner asserts that "Defendant['s] Due Process rights was [sic] violated when Trial Counsel fail[ed] to properly challenge the fact to how The Doctor Report containing a confession of defendant ended up inside the deliberation room with the jury."  ECF No. 6 at 8.

Again, this issue of trial counsel's alleged ineffectiveness was not presented to the Superior Court in either the direct appeal or in the PCRA appeal.  Hence, the issue is procedurally defaulted.  In addition, we find the claim of trial counsel's ineffectiveness for failing to prevent the report from going out with the jury meritless because, on this record Petitioner cannot establish prejudice from any deficient performance on the part of counsel given that two other witnesses testified that Petitioner confessed to them that he was the driver of the vehicle.  See Com. v. Roles, 116 A.3d 122, 130 (Pa. Super. 2015) ("the Commonwealth contends that even if the jury did view the evidence and the court improperly provided it to the jury, any error was harmless. It points out that Officer Gregory and Dr. Perry both testified that Appellant had told them that he was the driver.").

For these reasons, Ground Three and Supplemental Claim 10 do not merit federal habeas relief.

### D.  Ground Four and Supplemental Claims 14 and 15 Fail to Merit Relief.

In Ground Four, Petitioner complains that his "trial counsel never challenged the fact that the evidence pertaining to the text messages sent from the victim's cell phone would have

exonerated the defendant." ECF No. 6 at 10.[5]  Essentially, Petitioner asserts that the alleged text

messages would confirm that it was Petitioner's son and not Petitioner who was driving.

The Superior Court addressed this issue on the merits as follows:

> Appellant's fifth averment on appeal is that trial counsel was ineffective
> for failing to investigate text messages that his son sent to his girlfriend on the
> night of the accident. Appellant claimed at the PCRA hearing that the text
> messages contained "helpful evidence." N.T. PCRA Hearing, 6/27/16, at 27. Both
> Mr. Banda and Mr. Gleason testified that they had no recollection of discussing
> text messages with Appellant. *Id*. at 7, 15. We conclude that this claim is
> completely unsupported. Appellant did not present any testimony from Brian Jr.'s
> girlfriend about text messages sent by Brian Jr., he did not obtain Brian Jr.'s
> cellular telephone, which had been secured by police, and he did not obtain
> records from the cell phone service provider verifying the existence of text
> messages. It is established that a PCRA petitioner, to obtain relief, must both
> plead  and **prove** that  counsel  was  ineffective. ***Williams***, *supra*; 42  Pa.C.S.  §
> 9543(a). We concur with the PCRA court that Appellant cannot prevail on this
> position due to the absence of any proof that these text messages existed.

Com. v. Roles, 2017 WL 3172594, at *8; ECF No. 32-3 at 19.

Petitioner fails to argue, yet alone carry his burden to show, that the foregoing disposition

of this claim by the Superior Court was contrary to or an unreasonable application of United

States Supreme Court precedent.  Indeed, it is neither.   Given the presumption of effectiveness

---

[5]  Petitioner's Supplemental Claims Number 14 and 15 are as follows:

14.  Defendant['s] Due Process rights were violated when Trial Counsel fail[ed]
to properly challenge the court withholding evidence that Defendant was not
driving said vehicle on the night in question.  In fact the text message sent from
the victim's cell phone the night in question specifically clear[s] Defendant of
said accident but the East Taylor Police Department has refused to release the
victim's phone that hold evidence of the accident in question.  This is a violation
of the U.S.C. 5, 8, 9, 14 Amendments.

15.  Defendant['s] Due Process rights were violated when the District Attorney
and the Court refused to release evidence that's being held in their possession.
This is a Brady violation being conducted by the courts and clear[ly] violating the
U.S.C. 5, 8, 9, 14 Amendments.

ECF No. 6 at 18.

of counsel, it is the burden of the Petitioner to rebut the presumption and establish all those facts necessary to do so.   As the Superior Court found, Petitioner clearly failed to establish the predicate facts to sustain the claim that counsel was ineffective for doing anything with supposed text messages that, for all the record shows, were simply non-existent.

Accordingly, Ground Four and Supplemental Claims 14 and 15 fail to merit any relief in these federal habeas proceedings.

### E.   Supplemental Claims 7 and 8 Fail to Merit Relief.

In Supplemental Claims 7 and 8, Petitioner complains that his trial counsel was ineffective for failing to have analyzed what appeared to be a spot of blood on the driver's side of the truck.   Petitioner suggests that analysis of the spot could have tended to support the conclusion that he was not the driver of the vehicle.

The Superior Court addressed this claim in the PCRA appeal as follows:

> Appellant's third contention is that trial counsel was ineffective for not obtaining DNA testing of what could have been a blood stain found on the driver's side of the truck after the crash. Events pertinent to this issue occurred on August 22, 2013, immediately after denial of Appellant's motion to dismiss his case under Pa.R.Crim.P. 600. A question arose as to whether Appellant desired further testing of a stain found on the driver's side of the truck. A previously-scheduled trial was continued in order to have that stain tested. N.T.  Rule 600 Hearing, 8/22/13, at 10. A swab of the stain was sent to a state laboratory, but the returned report was ambiguous as to whether the stain was blood. It stated in one section that the "there was no blood on the swab," but, in another paragraph, the report said, "there was blood." N.T.  Rule 600 Hearing, 8/22/13, at 9.

> The trial court ascertained that the Commonwealth was ready to proceed immediately with trial, and it asked Mr. Banda if the report affected his desire to go forward. At that point, Mr. Banda said, "I would like to go to trial even if there is not a final determination of that spot as being blood or not." *Id*. The court responded: "[L]et's be forthright here. Is there something you think that should be, there should be a further analysis or not? If there is, what are we going to do? If there isn't, we're going to go forward with the trial." *Id*. When counsel refused to either admit or deny that further testing was needed, the trial court said that, if counsel believed further testing was not in order, the trial would proceed. *Id*. at 11. The parties immediately started to select a jury.

At the PCRA hearing, Mr. Banda explained that he did not obtain additional testing since he was unsure as to whether it would exonerate Appellant and since Appellant did not want to delay the trial further. N.T. PCRA Hearing, 6/27/16, at 15. The PCRA court herein credited trial counsel's explanation for not asking to continue trial to obtain further testing of the stain. As the record supports the trial court's credibility determination and counsel articulated a reasonable strategy for not getting more testing on the stain, we reject Appellant's stance that Mr. Banda was ineffective in this respect.

Com. v. Roles, 2017 WL 3172594, at *7; ECF No. 32-3 at 16 - 18.

 Petitioner fails to carry his burden to show that the Superior Court's disposition of this claim was contrary to or an unreasonable application of United States Supreme Court precedent. Accordingly, Supplemental Claims 7 and 8 do not merit federal habeas relief.

**F.  Supplemental Claims 9, 12, 13, 17 and 18 are Procedurally Defaulted.**

Supplemental Claim 9 concerns an alleged hair strand found at the scene of the accident, but which was not tested.  Supplemental Claim 12 concerned Petitioner's trial counsel's alleged ineffectiveness for failing to challenge the supposed bias of Petitioner's trial judge. Supplemental Claim 13 concerned Petitioner's complaint about his trial judge setting bond predicated on him successfully completing an alcohol treatment program.  Supplemental Claims 17 and 18 concerned Petitioner's alleged successful completion of a Rehabilitation Program that the trial judge ordered Petitioner to undergo.   Merely, recounting these five Supplemental Claims and comparing them to the claims recounted above in the State Court procedural history demonstrates that none of these claims were ever raised in the appellate briefs filed in the Superior Court in the direct appeal or in the PCRA proceedings.

Accordingly, we find all of these issues to have been procedurally defaulted.  And, on the record before this Court, Petitioner cannot establish either cause and prejudice or a miscarriage

of justice.  Accordingly, Supplemental Claims 9, 12, 13, 17 and 18 cannot afford Petitioner any relief in these federal habeas proceedings.

## V.  CONCLUSION

For the reasons set forth herein, none of the four Grounds for Relief or any of the Supplemental Claims merit the grant of federal habeas relief.  Accordingly, the Petition is denied.

## VI.  CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability will be denied.

## ORDER

**AND NOW,** this 11th of June 2020, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**.  Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    BRIAN J. ROLES
LF9465
SCI-Camp Hill
P.O. Box 200
Camp Hill, PA 17001-8837

All counsel of record via CM-ECF